## Lewis v. State, 41 Miss. R., 686.

### Forfeiture of Recognizance.

Where a master enters into a recognizance for the appearance of his slave to answer an indictment for a felony, the subsequent emancipation of the slave discharges the master of the slave from the obligations of the recognizance.

Where the surety in a recognizance or bail-bond at the proper term of the court tenders his principal to the sheriff of the county, who receives him and imprisons him in a safe jail, from which he is released by irresistible force, it is a discharge of the surety.

The responsibility of a surety on a bail-bond or recognizance, ceases when he delivers the body of his principal to the sheriff of the proper county.

Error to Greene circuit court. Hancock, J.

*George Wood*, for plaintiff in error.

The court should not have sustained the demurrer. The first presents as a defense the emancipation of the slave by the paramount authority of the state. The plaintiff had entered into the recognizance only as the master of the then slave. In this

capacity, and in this only, he had a right to control him. He was not the slave's surety. But he was bound as principal in the recognizance, and in no other manner could he have been bound. He was bound to the state, and the state put it out of his power to perform. Hence he is entitled to be discharged from the recognizance. 2 Story on Contracts, 547, § 975. He is discharged by the act of the promise. Ib., 975.

The second plea avers the surrender to the sheriff and the release by federal authority of the slave David. If the plaintiff had a right to surrender him, then the defense is good. The recognizance, however, was taken in open court. Now, whether the plaintiff had a right to surrender him to the sheriff or not, yet it is contended he had a right to use the jail for his safe-keeping. If, after the use of due care on plaintiff's part, the prisoner escaped from jail without default in him, or if he was released by an authority that could not be resisted, it is submitted that he ought not to be made liable on his recognizance.

*C. E. Hooker*, attorney general.

1. The courts of Mississippi have ever held that though the negro was a slave, as a person he is responsible for crime, and when charged is triable and bailable precisely as white persons. In this case, therefore, the owner can claim justly no immunity in consequence of the manumission of the slave from any liability incurred.

The second plea, setting up that the defendant had been surrendered to the sheriff of the proper county, and had been confined in the jail of another county, and from thence he made his escape by interference of the military, presents a more plausible ground of defense, and as the facts are admitted by the demurrer, it must be assumed that they are true. Ordinarily, a surrender of a prisoner in good faith by his sureties, is regarded as a satisfaction of the bond, and I leave it to the decision of the court.

SHACKELFORD, C. J. :

This was a *scire facias* issued upon a judgment *nisi*, upon a forfeited recognizance, entered into by Edward A. Lewis, the

plaintiff in error, as the master of his slave David conditioned for David's appearance at the circuit court of Greene county, to answer to an indictment for an attempt to have carnal intercourse with a white female child, under the age of fourteen years.

The *scire facias* recites the recognizance, the day David was bound to appear, the forfeiture of the same at the October term, 1866, of the court, and the judgment *nisi*, &c., against plaintiff in error.

The plaintiff in error appeared and pleaded to the *scire facias*, four pleas.

Three of which are in substance as follows (the fourth, having relation to the kind of money the bond or recognizance was to be paid in, in case of forfeiture, we consider unnecessary to notice):

First. When plaintiff in error entered into the recognizance, he was the master and owner of the slave David, and as such entered into the recognizance.

That before forfeiture and judgment *nisi*, the people of the state of Mississippi, in convention assembled, in August, 1865, " ordered that slavery should no longer exist in the state of Mississippi," &c.

That, by that ordinance, the slave David was manumitted, and plaintiff lost control of the freedman David.

Second. That after the surrender of the Confederate armies, defendants took possession of the body of David, and had him at the court-house of said county of Greene, ready to be delivered to said court, to answer unto the state of Mississippi of the charge aforesaid, being the term of court at which said David should appear, by the conditions of the said recognizance, to wit: the October term, 1865, states there was no court held at that term, on account of the disturbed condition of the country; that he surrendered the said David to the sheriff of Greene county for safe keeping; that by reason of the insecurity of the county jail, David was, for better security, carried to the jail of Wayne county, where he was safely lodged to await his trial upon said charge, where he remained until he was forcibly released by the Federal soldiers quartered around and about

said jail.. By being released as aforesaid, defendant could not have his body before the court," &c.

Third. That he had the body of the said David before the court, to deliver him up for trial to answer the charge, and tendered his body to the state, &c., at the term the *scire facias* was returnable.

The state demurred to all the pleas of the plaintiff in error. Demurrer was sustained by the court below. The plaintiff in error refused to plead—further, the judgment was made final by the court.

To revise this judgment, this writ of error is prosecuted.

All the facts, properly pleaded, are admitted by the demurrer of the state.

Are those facts an answer to the *scire facias*, or should the demurrer have been overruled by the court below?

This is the only question for the consideration of this court.

The plaintiff in error, as the master of the then slave David, entered into a recognizance to have him before the October term, 1865, of the circuit court of Greene county, to answer the state, &c.

There was a failure of the October term, 1865, of the said circuit court; consequently David could not be there tried. Plaintiff in error, had his body ready to be delivered, to answer the charge, at the court-house, at that time, David voluntarily appearing.

When his master, the plaintiff in error, entered into said recognizance as his master (as appears from the recognizance), David was in his custody by the right of ownership and by law. He had absolute control of his person, and to keep him in any way he saw proper—by incarceration, or otherwise.

Before that term of the court, the sovereign power—the paramount law of the land—had put an end to the ownership of the plaintiff in error to David, his former slave.

His *status*, as slave, was changed; he was a freedman.

The right to control the person of David ceased with his emancipation; and any attempt on the part of his former master, the plaintiff in error, to exercise any constraint over the liberty of the freedman David would have rendered the plaintiff

in error liable to a criminal prosecution for attempting to exercise the rights of a master over his former slave.

David being a slave at the time his master entered into recognizance, he could not enter into any contract whatsoever; and not having entered into any bond or recognizance after he became a freedman, consequently was not bound by any obligation incurred in his behalf by his master.

No penalty—affecting his late master by a forfeiture—could reach David. He could appear to stand his trial or not, as he might see proper. He did appear, *as a freedman*, at the time his former master had bound himself he should appear.

Considering their changed relations towards each other, the plaintiff in error saw proper to instruct the sheriff of Greene county to take the man David into his custody, which he did in October, 1865. This was all the plaintiff in error could do under the circumstances. The responsibility of the plaintiff in error, it seems to us, ceased when he surrendered David to the sheriff.

He was precisely in the situation he would have been had there been no recognizance. If by law he was bound for the appearance of the freedman David after his surrender to the sheriff, plaintiff in error showed a sufficient excuse for the non-appearance of David in his second plea, showing that the prisoner David was released from a *secure* jail, where he had been placed for better security, *by an irresistible force*, the soldiers of the United States army, stationed around the jail in Wayne county.

As it was not the fault of the plaintiff in error, or of David, that he was not tried at the October term, 1865, of the court, the plaintiff in error should have been released from his recognizance when David appeared and was offered up to the state, as appears by the third plea, when the judgment *nisi* was made absolute against the plaintiff in error.

It was, therefore, error in the circuit court to sustain the demurrer to plaintiff's pleas to the *scire facias*. And this court, proceeding to render the judgment which should have been rendered by the court below, orders that the judgment of the circuit court be reversed, and that judgment be entered here over-

ruling the demurrer of the state, and that judgment be entered in the case for plaintiff in error.